UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
BOARD OF TRUSTEES OF THE UFCW LOCAL
174 PENSION FUND,

                                      MEMORANDUM & ORDER
                    Plaintiff,      11-CV-3406(JS)(ARL)

     -against-

JERRY WWHS CO., INC. d/b/a WEST
WASHINGTON MEATS,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Ira D. Wincott, Esq.
                    Law Office of Ira D. Wincott
                    166 East Jericho Turnpike
                    Mineola, NY 11501

For Defendant:      Eric C. Zabicki, Esq.
                    Douglas J. Pick, P.C.
                    350 Fifth Avenue, Suite 3000
                    New York, NY 101158

SEYEBRT, District Judge:

        Plaintiff Board of Trustees of the UFCW Local 174 Pension Fund ("Plaintiff") commenced this action on July 14, 2011 against Jerry WWHS Co., Inc. d/b/a West Washington Meats ("Defendant") seeking payment of Defendant's withdrawal liability pursuant to Section 4203 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1383. Presently pending before the Court is Defendant's motion to dismiss the Complaint. For the following reasons, Defendant's motion is DENIED.

BACKGROUND

Plaintiff is the named fiduciary of the Local 174 Pension Fund (the "Fund").[1] (Compl. ¶ 2.) The Fund is administered and maintained pursuant to collective bargaining agreements in accordance with Section 302(c)(5) of the Taft Hartley Act, 29 U.S.C. § 186(c)(5). (Compl. ¶ 2.) Defendant and UFCW Local 342, the labor organization that for collective bargaining purposes represented the Defendant's employees, were the parties to one of those collective bargaining agreements (the "CBA"). (Compl. ¶ 6.) Pursuant to the CBA, Defendant had a duty to make contributions to the Fund in accordance with the terms of the CBA as well as the terms of the Agreement and Declaration of Trust governing the Fund. (Compl. ¶ 6.)

At some point in or before 2008, Defendant stopped making the required contributions and completely withdrew from the Fund, thereby triggering the imposition of withdrawal liability under ERISA § 4203, 29 U.S.C. § 1383. (Compl. ¶ 7.) However, Defendant refused to make any withdrawal liability payments; so in June 2008, Plaintiff commenced a lawsuit in the Eastern District of New York seeking payment of the outstanding withdrawal liability. (Compl. ¶ 7.) Defendant failed to appear or otherwise respond to that complaint, and in April 2009

---

[1] The Fund is an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)-(3) and is a multi-employer plan within the meaning of 29 U.S.C. § 1002(37).

2

Plaintiff was awarded a default judgment in the amount of $322,680.15. (Compl. ¶¶ 8-9 & Ex. A.)

Rather than seek to collect under the default judgment, on September 3, 2009, Plaintiff entered into a settlement agreement (the "Agreement") with Defendant. (Compl. Ex. B.) Pursuant to the Agreement, Defendant agreed to pay Plaintiff a total of $503,961.00 in periodic installments to settle the outstanding withdrawal liability. (Compl. ¶ 11 & Ex. B ¶ 2.) The Agreement also provided that, in the event of default, Plaintiff had "at its sole option and discretion the right to demand immediate payment of the entire $503,961.00, together with interest, liquidated damages, costs and attorney's fees." (Compl. Ex. B ¶ 3.) Defendant "expressly waive[d] any notice of the submission of a default judgment to the Court . . . and further expressly waive[d] any right to challenge, object to or defend against entry by the Court of such default judgment." (Compl. Ex. B ¶ 3.)

Defendant failed to make its scheduled payment on February 17, 2011. (Compl. ¶ 13.) Then, on April 6, 2011, Defendant assigned all of its assets and liabilities to Douglas A. Pick (the "Assignee") for the benefit of all of Defendant's creditors. (Pick Aff. ¶ 3 & Ex. B.) Defendant's estate is now being administered by Mr. Pick under the supervision of the New York State Supreme Court, Kings County (the "Assignment

3

Proceeding"). In re Gen. Assignment for the Benefit of Creditors of Jerry WWHS Co., Inc. d/b/a W. Wash. Meats v. Pick, No. 8288/2011 (Sup. Ct. Kings Cnty.). (Pick Aff. ¶ 3.) Then, on May 17, 2011, Defendant missed a second payment to Plaintiff, again breaching the Agreement. (Compl. ¶ 13.)

After providing Defendant with a notice of default and an opportunity to cure, Plaintiff commenced the present action on July 14, 2011, seeking a judgment in the amount of $503,961.00 in accordance with the terms of the Agreement. (Compl. ¶ 18.) Plaintiff served the Summons and Complaint on Defendant through the New York Secretary of State on July 26, 2011. (Docket Entry 2.) Defendant, however, did not receive the Summons and Complaint until August 12, 2011, because the address on file with the Secretary of State was outdated and the mail needed to be forwarded. (Pick Aff. ¶ 6 & Ex. E.)[2]

On August 15, 2011, Defendant filed the pending motion to dismiss. It consists of an affidavit of the Assignee and accompanying exhibits. Defendant did not file a memorandum of law stating that one was not necessary because the motion to dismiss "does not present any novel issues of law." (Pick Aff. ¶ 10.)

---

[2] According to the Assignee, because Defendant was no longer a functioning business, the Assignee had arranged for Defendant's mail to be forwarded to him. (Pick Aff. ¶ 6.)

4

DISCUSSION

Defendant seeks dismissal on two grounds: (1) because Plaintiff "failed to properly effect service of the Summons and Complaint with regards to this action," and (2) because Plaintiff is required to pursue all claims in the pending Assignment Proceeding as opposed to "piecemeal" litigation "outside of the confines of the Assignment Proceeding." (Pick Aff. ¶ 8.) The Court will address each argument in turn.

I. Service of Process

Under New York law,[3] service of process on a domestic corporation shall be made either by delivery to an agent authorized to receive service or pursuant to Section 306 of New York's Business Corporation Law. N.Y. C.P.L.R. 311(a)(1). Section 306 of the Business Corporation Law provides for service on a domestic corporation by personally delivering two copies of the summons and complaint to the Secretary of State, who then sends them via certified mail, return receipt requested "to such corporation, at the post office address, on file in the

---

[3] Rule 4 of the Federal Rules of Civil Procedure provides that service of process on a corporation may be completed by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or service is made." FED. R. CIV. P. 4(e)(1), (h)(1)(A). Since the present action was commenced in the Eastern District of New York, the Court looks to New York state law.

5

department of state, specified for the purpose." N.Y. Bus. Corp. Law § 306(b)(1).

Here, Defendant admits that Plaintiff served copies of the Summons and Complaint on the Secretary of State, who in turn "mailed copies thereof" to Defendant. (Pick Aff. ¶ 6). Thus, by effectuating service on Defendant through the Secretary of State, Plaintiff complied with its service obligations under New York law.

Defendant appears to be arguing that Plaintiff was required to serve process on the Assignee.[4] However, the exact same argument was rejected by District Judge Arthur D. Spatt in a related proceeding involving these same parties. See Abondolo v. Jerry WWHS Co., __ F. Supp. 2d __, 2011 WL 6012504, at *3 (E.D.N.Y. Dec. 1, 2011). There, Judge Spatt denied the Assignee's motion to dismiss for lack of proper service stating that:

> The fact that [West Washington Meats] had an outdated address on file with the Secretary

---

[4] Defendant did not clearly articulate why it believed service was improper. Rather, the Assignee merely stated: "[D]espite his knowledge of my appointment as Assignee and his submission of a the Fund's [sic] proof of claim in the Assignment Proceeding, and in an apparent attempt to subterfuge [sic] [Plaintiff's counsel] caused the Summons and Complaint in this proceeding to be served by way of the New York State Department of State . . . ." (Pick Aff. ¶ 6.) The Court is interpreting this statement broadly to mean that Defendant believes that the Assignee, not the Defendant through the Secretary of State, should have been served. The Court also notes that Defendant failed to cite a single authority in support of this assertion.

> of State does not compel a different result. "[I]t is a corporation's obligation to keep on file with the Secretary of State the current address of an agent to receive service of process" and therefore "service of process on a corporation is deemed complete when the Secretary of State is served, regardless of whether such process ultimately reaches the corporate defendant."

Id. (alteration in original) (quoting Cedeno v. Wimbledon Bldg. Corp., 207 A.D.2d 297, 298, 615 N.Y.S.2d 40, 40-41 (1st Dep't 1994)). Accordingly, for the same reasons articulated by Judge Spatt in Abondolo, Defendant's motion to dismiss the present action for insufficient process is DENIED.

II. Deference to the Assignment Proceeding

Defendant is also asking this Court to dismiss because "[w]hile there is no 'automatic stay' applicable in an assignment proceeding . . . , there is nevertheless a de facto stay and/or public policy under the Debtor and Creditor Law favoring the review and resolution of all liabilities and assets of an assignor in a single proceeding under the supervision of the assignee and the Supreme Court." (Pick Aff. ¶ 8 n.5.) Plaintiff refutes this argument, stating that "there is no case law or statutory authority which suggests that while the [state c]ourt is administering an [a]ssignment for the [b]enefit of [c]reditors, no causes of action may be brought against an Assignor or Assignee." (Friedman Aff. ¶ 18.) Both parties are correct.

7

A general assignment for the benefit of creditors is an "assignment by a debtor transferring all of his or her property in general terms to an assignee in trust for all creditors of the debtor, or a voluntary transfer by a debtor of all his property to a trustee of his own selection, for administration, liquidation, and equitable distribution among his creditors." Compangia Distribuzione Calzature, S.R.L. v. PSF Shoes, Ltd., 206 A.D.2d 343, 344, 613 N.Y.S.2d 931, 932-33 (2d Dep't 1994). "A general assignment 'is distinguishable from a federal bankruptcy proceeding in that no discharge from the assignor's debts is obtainable in an assignment for the benefit of creditors.'" Abondolo, 2011 WL 6012504 at *4 (quoting Freeman v. Marine Midland Bank N.Y., 419 F. Supp. 440, 447 (E.D.N.Y. 1976)). Because the assignor's debts are not discharged, "the creditor is not estopped from exhausting his legal remedies against the assignor." Id. (internal quotation marks and citations omitted). Accordingly, when an assignment proceeding is commenced, "New York law governing general assignments, unlike the federal bankruptcy law, does not impose an automatic stay on all litigation." Id. (collecting cases).

However, Defendant is correct that "public policy considerations tend to result in the dismissal of plenary actions in favor of assignments for the benefit of creditors." Id. at *5. As one court explained:

8

> Where there is a special course of procedure, provided for a specific purpose, regulating certain proceedings, and adopted for the purpose of facilitating the disposition of matters cheaply and expeditiously, parties should be relegated to such method, and not be permitted a choice of tribunals, unless some substantial reason exists therefor, which should be specifically averred. In the case of insolvent assignments, the statute provides an expeditious and cheap method of procedure, where the rights of all creditors can be fairly protected, and the estate cheaply administered. Under such circumstances, the assignee ought not to be subjected to the vexatious trouble and burden of an action which leads, in the end, to an accounting, for which the statute provides, nor should the assigned estate be made subject to the costs and expense of an action and the inevitable waste which the fees of referees and other contingencies produce, as well as the costs of the action itself, unless there be exceptional grounds therefor; and such necessity ought to be clearly alleged.

Hynes v. Alexander, 2 A.D. 109, 37 N.Y.S. 527, 528 (2d Dep't 1896); accord Abondolo, 2011 WL 6012504, at *5.

"Nevertheless, whether to impose a stay or dismiss a claim in favor of an assignment proceeding remains a matter of judicial discretion." Abondolo, 2011 WL 6012504, at *5. The Court again finds Judge Spatt's decision in Abondolo to be directly on point. In Abondolo, the petitioners commenced suit in district court to confirm an arbitration award in their favor for unpaid withdrawal liability. Judge Spatt held that public policy did not favor dismissing the federal petition in favor of

9

the Assignment Proceeding[5] because since "the [p]etitioners will still need to submit the claim for unpaid contributions in the Assignment Proceeding to effectuate judgment, confirming the award would not interfere with the 'orderly administration' of the estate." Id. at *6 (quoting Mason Tenders Dist. Council Welfare Fund v. Logic Const. Corp., 7 F. Supp. 2d 351, 359 (S.D.N.Y. 1998)). The same rationale applies here: Entering a default judgment against Defendant will not allow Plaintiff to circumvent the Arbitration Proceeding. Plaintiff will have to present any final judgment to the Assignee "who is obliged by law to accord that claim any priority to which it is entitled and, absent any priority, to distribute assets remaining after payment of priority claims ratably among the general unsecured creditors." Logic Const. Corp., 7 F. Supp. 2d at 357; accord Abondolo, 2011 WL 6012504, at *6. Accordingly, the Court finds that public policy considerations do not require dismissal and hereby DENIES Defendant's motion to dismiss on those grounds.

---

[5] The Court notes that it is the same Assignment Proceeding at issue in this case.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Docket Entry 3) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED: March  5 , 2012
       Central Islip, New York